## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SMOOTHIE KING FRANCHISES, INC.,** | § | **CIVIL ACTION NO:** _____ |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | |
| | § | **TRIAL BY JURY IS DEMANDED** |
| **UKE-MEX ENTERPRISES, INC.,** | § | |
| **WALTER PUZYK, CHRISTINE** | § | |
| **PUZYK, MANUEL CHAVEZ, and** | § | |
| **ARMANDO CHAVEZ,** | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

COMES NOW Smoothie King Franchises, Inc. and files its Original Complaint against UKE-MEX Enterprises, Inc., Walter Puzyk, an individual, Christine Puzyk, an individual, Manuel Chavez, an individual, and Armando Chavez, an individual (collectively sometimes referred to as "Defendants"), and for this cause of action respectfully shows as follows:

### I. SUMMARY OF THE ACTION

1.     Plaintiff Smoothie King Franchises, Inc. ("SKFI"), is the franchisor of the well-known nutrition businesses offering nutritional drinks and general nutrition products from retail locations bearing the Smoothie King® name.    Defendant UKE-MEX Enterprises, Inc. ("UKE-MEX"), has until recently owned and operated a franchise in the Smoothie King® system that dated back to a Franchise Agreement signed by UKE-

MEX's predecessor in 1997, for a franchised location at 7044 Highway 6 North in Houston, Texas ("the 123 Store").

2.     In order to induce SKFI to allow the Franchise Agreement to be transferred to UKE-MEX in 1999, Defendants Armando Chavez, Manuel Chavez, Christine Puzyk, and Walter Puzyk signed a guaranty agreement.   Through that agreement, Armando Chavez, Manuel Chavez, Christine Puzyk, and Walter Puzyk ("the Guarantors") guaranteed to SKFI that they would make full and prompt performance of all of the corporation's obligations to SKFI under the Franchise Agreement, including payment of all amounts due or payable to SKFI and the post-termination obligations required of UKE-MEX.  Those obligations of UKE-MEX and the Guarantors would later include the promises made in the Mutual Termination Agreement.   Hereinafter, the personal promises are referenced as "the Guaranty," and the individual Guarantors and UKE-MEX are collectively referred to as "the Defendants."

3.     In February of 2010, SKFI and UKE-MEX entered into a Mutual Termination Agreement allowing UKE-MEX to continue operating its franchised business only until the agreed-upon date of no later than April 15, 2010.

4.     The parties entered into the Mutual Termination Agreement because the Defendants had failed to renew the Franchise Agreement in a timely fashion, the Defendants had defaulted under and breached their commitments in the Franchise Agreement, and the Defendants had also breached their obligations in a subsequent Mutual Operation Agreement.  Those defaults and breaches, including both financial and

other types of defaults and breaches, continued through 2009 and early 2010. Through the Mutual Termination Agreement, SKFI granted the Defendants additional time to attempt to transfer their business before the termination of the 123 Store became final. The Defendants failed to transfer their business in the time allowed.

5.    Upon the expiration of the time allowed in the Mutual Termination Agreement, and the subsequent final termination of the Franchise Agreement, the Defendants' post-termination contractual obligations were triggered. Specifically, the Defendants are contractually required to do the following: : (1) cease operating the 123 Store and discontinue representing themselves as Smoothie King® franchisees with respect to the 123 Store; (2) cease using any confidential recipes, formulas, customer and supplier lists, product specification lists, methods, procedures, or techniques associated with the Smoothie King® system with respect to the 123 Store; (3) cease using the name and mark "SMOOTHIE KING" and all other related marks, names, slogans, and devices, including signs, advertising materials, and so forth with respect to the 123 Store; (4) sign the proper documents to turn over to SKFI the telephone numbers associated with the 123 Store; (5) return the confidential and proprietary Manuals and other materials relating to the operation of the 123 Store; (6) cancel any assumed name or equivalent registration that contains the name of "Smoothie King" or any of the other proprietary marks of SKFI with respect to the 123 Store; (7) promptly pay all sums owning to SKFI and its affiliates; and (8) comply with their agreement not to engage in competition with the 123 Store.

6.    The Defendants have failed to comply with their post-termination obligations under the Franchise Agreement.   Rather than honor their contractual requirements, the Defendants have simply continued to operate the 123 Store, with Smoothie King® signs and other trademarks, trade names, and trade dress clearly visible to the public, all causing ongoing harm to SKFI.

7.    The Defendants have also failed to comply with their agreement to pay royalty fees and advertising fees.   The Defendants presently owe $2,897.34 through April, 2010, in royalty and advertising fees plus payments for ongoing sales for the 123 Store.

8.    Further, Defendant UKE-MEX previously operated two additional Smoothie King stores, Nos. 175 and 382, respectively, both of which have closed. Defendant UKE-MEX owes SKFI $3,699.45 in unpaid royalties and advertising fees for Store No. 175 (closed in May 2009) and $7,344.94 in unpaid royalties and advertising fees for Store No. 382 (closed in January 2008).   These obligations were guaranteed by Defendants.

## II. **THE PARTIES**

9.    Plaintiff SKFI is a corporation organized under the laws of the State of Louisiana, with its principal place of business in Louisiana.   It serves as the franchisor under Smoothie King® franchise agreements.

10.    Upon information and belief, Defendant UKE-MEX is a corporation, organized under the laws of the State of Texas.   Its principal place of business is in

Houston, Harris County, Texas.   As stated above, UKE-MEX formerly operated a Smoothie King® franchise in Texas.   According to the records of the Secretary of State of Texas, UKE-MEX's charter was forfeited on April 9, 2010.   The registered agent for service of process is Christine Puzyk, 633 Mason Road, Katy, Texas 77450.

11.     Upon information and belief, the individual Defendants Walter Puzyk, Christine Puzyk, Manuel Chavez, and Armando Chavez are all citizens of the State of Texas, and they own Defendant UKE-MEX.   Walter Puzyk and Christine Puzyk may be served at their residence address of 902 Crossfield Drive, Katy, Texas 77450-2906. SKFI does not have at this time an address for service for Manuel Chavez and Armando Chavez.

### III. <u>JURISDICTION AND VENUE</u>

12.     Federal jurisdiction exists pursuant to 28 U.S.C. § 1338 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because this action is for trademark infringement under the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051, *et seq*.

13.     The Defendants are subject to personal jurisdiction in Texas.

14.     A substantial part of the events giving rise to SKFI's claims occurred within the Southern District of Texas, and the Defendants are subject to personal jurisdiction in this district, providing proper venue pursuant to 28 U.S.C. § 1391.

## IV.  CONDUCT GIVING RISE TO VIOLATIONS OF LAW

**A.    The Smoothie King Franchises, Inc., Franchise Agreement**

15.    On or about November 5, 1997, SKFI entered into a written Franchise Agreement under which it granted the franchisee the right to operate a Smoothie King® store at 7044 Highway 6 North, Houston, Texas 77095 (the "Franchise Agreement"). The store is known as the Smoothie King Store No. 123.  The original franchisee transferred the Franchise Agreement to UKE-MEX in 1999, and SKFI consented to that transfer.

16.    Pursuant to Section 2.2 of the Franchise Agreement, the term of the contract was ten years from the date the franchised unit opened for business, which opening occurred, on information and belief, in March of 1998.

17.    At or about the same time that UKE-MEX received assignment of the Franchise Agreement in 1999, Defendants Armando Chavez, Manuel Chavez, Christine Puzyk, and Walter Puzyk signed the Guaranty.

18.    Under the terms of the Guaranty, Defendants Armando Chavez, Manuel Chavez, Christine Puzyk, and Walter Puzyk agreed that they were obligated personally to make payments due under the Franchise Agreement and that they would guarantee performance of all of UKE-MEX's obligations under the Franchise Agreement.

19.    Pursuant to Section 3.5 of the Franchise Agreement, the Defendants agreed to pay SKFI a royalty fee equal to 5% of the weekly gross sales of the 123 Store.

20.    In addition, pursuant to Section 3.6 of the Franchise Agreement, the Defendants agreed to pay SKFI an advertising fee of up to 2% of the weekly gross sales of the 123 Store.

21.    Pursuant to Section 25.4 of the Franchise Agreement, the Defendants agreed that:

> If this Agreement is terminated for default, or in the event Franchisor or Franchisee retains legal counsel to enforce any provision of this Agreement, including obtaining injunctive or other relief, or to collect any payments due hereunder, the prevailing party in any proceeding shall be entitled to recover its damages, costs and expenses, including reasonable legal and accounting fees, at the trial level and on appeal, incurred as a result of the default or pursuing its remedies at law or under this Agreement.

## B.    Post-Termination Obligations

22.    The Defendants' obligations upon termination under the Franchise Agreement are set forth in Section 16.1, which provides:

> 16.1    Upon the expiration of this Agreement, or its termination for any reason, all of Franchisee's rights hereunder shall terminate, and Franchisee shall cease all operation of the Franchise Business and all use of the Proprietary Marks and System. In particular, and without limiting the foregoing, Franchisee shall:
>
> 16.1.1    Immediately cease to operate the Franchised Business and at no time thereafter represent itself, directly or indirectly, as a current or former franchisee of Franchisor.
>
> 16.1.2    Immediately and permanently cease to use, in any manner whatsoever, any confidential recipes, formulas, customer and supplier lists, product specifications lists, methods, procedures, or techniques associated with the System, the names and marks "SMOOTHIE KING", "SMOOTHIE KING HOME OF THE MUSCLE PUNCH",

and all other Proprietary Marks and distinctive names symbols, logos, insignia….

16.1.3 Take such action as may be necessary to cancel any assumed name or equivalent registration that contains the name "SMOOTHIE KING", "SMOOTHIE KING HOME OF THE MUSCLE PUNCH", or an of the other Proprietary Marks….

16.1.4 Immediately deliver to Franchisor or its designee the Manuals and all other materials relating to the operation of the Franchised Business….

16.1.5 Promptly pay all sums owing to Franchisor, its subsidiaries, affiliates, and divisions.

23.    Pursuant to Section 17.3.2 of the Franchise Agreement, the Defendants further agreed that, for a period of two years following termination or expiration of the Franchise Agreement, they would "refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of Franchisor or other franchisees of Franchisor within the market area of the Unit location designated herein or any other Smoothie King unit in existence or planned as of the time of termination or expiration of this Agreement."

## C.    Termination Of The Franchise Agreements

24.    The Franchise Agreement expired by its terms on or about March 27, 2008.

25.    Through various letters, agreements, and extensions, the parties agreed that the Franchise Agreement would be terminated effective April 30, 2009.

26.     On June 19, 2009, the parties entered into a Mutual Operation Agreement by which the Defendants' rights to operate the 123 Store were extended to December 31, 2009.

27.     Ultimately, through the Mutual Termination Agreement entered into by the parties as of February 17, 2010, the Defendants were given until March 31, 2010, to enter into a purchase agreement with a third party to buy their franchise rights, with a closing on such a transfer to take place no later than April 15, 2010. A copy of the Mutual Termination Agreement is attached as Exhibit A.

28.     The Defendants did not sell their franchise rights.

29.     By letter dated April 16, 2010, SKFI once again notified the Defendants the Franchise Agreement had been terminated, and SKFI reminded the Defendants of their post-termination obligations under the Franchise Agreement.

**D.     Defendants' Failure To Comply With The Post-Termination Obligations Set Forth In The Franchise Agreement**

30.     The Mutual Termination Agreement provides that upon termination or assignment, the UKE-MEX and the individual Defendants will comply with all post-termination obligations stated in the Franchise Agreement. The Defendants have failed to comply with any of the post-termination obligations under the Franchise Agreement.

31.     Specifically, the Defendants have failed to cease operating the 123 Store and discontinue representing themselves as Smoothie King® franchisees with respect to the 123 Store; to cease using any confidential recipes, formulas, customer and supplier

lists, product specification lists, methods, procedures, or techniques associated with the Smoothie King® system with respect to the 123 Store; to cease using the name and mark "SMOOTHIE KING" and all other related marks, names, slogans, and devices, including signs, advertising materials, and so forth with respect to the 123 Store; to sign the proper documents to turn over to SKFI the telephone numbers associated with the 123 Store; to return the confidential and proprietary Manuals and other materials relating to the operation of the 123 Store; to cancel any assumed name or equivalent registration that contains the name of "Smoothie King" or any of the other proprietary marks of SKFI with respect to the 123 Store; to promptly pay all sums owning to SKFI and its affiliates; and to comply with their agreement not to compete.

32.    The Defendants have also failed to comply with the post-termination obligation not to be involved in the operation of any similar business within in the designated area of their formerly franchised 123 Store, as they continue to operate the same business at the 7044 Highway 6 North Houston location at which they had operated the Smoothie King® franchise.

33.    SKFI has no adequate remedy at law to protect its substantial business and property rights.  The damages from the Defendants' failure to comply with the post-termination and trademark-law obligations are considerable and continuing and thus not capable of ascertainment at this time.

### V.  COUNT 1 - (TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND FEDERAL TRADEMARK DILUTION)

34.    SKFI hereby incorporates by reference paragraphs 1 through 33 herein.

Original Complaint                                                                                    Page 10

35.    By continuing to use the Smoothie King® trademarks and related marks and names in the 123 Store without a license to do so, the Defendants are violating federal trademark law, specifically Section 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), in that the Defendants are engaging in an obvious, intentional infringement of those marks, constituting false designation of origin of the good sold, and diluting the famous marks of SKFI.

36.    In passing off their businesses as an authorized nutrition business offering nutritional drinks and general nutrition products from retail locations bearing the Smoothie King® name, trademarks, and related marks and names, the Defendants have intended to and have confused the public into thinking the Defendants and their products were affiliated with SKFI, which they were not.

37.    Pursuant to the Lanham Act, SKFI is entitled to injunctive relief and damages caused by the violations by the Defendants, in an amount to be determined, plus treble damages, costs, disbursements, interest, and attorneys' fees.

## VI.  COUNT II - (BREACH OF FRANCHISE AGREEMENTS – FAILURE TO COMPLY WITH POST-TERMINATION OBLIGATIONS)

38.    SKFI hereby incorporates by reference paragraphs 1 through 33 herein.

39.    The Defendants have failed to comply with the post-termination obligations set forth in Section 16 of the Franchise Agreement, as quoted above.

40.    The Defendants' failure to comply with the post-termination obligations set forth in Section 16 of the Franchise Agreement, is causing irreparable harm and damage

to SKFI, is causing confusion in the marketplace, and will impair the goodwill associated with SKFI's trademarks, trade names, and trade dress.

41.     SKFI has no adequate remedy at law to protect its substantial business and property rights.  The damages from the Defendants' failure to comply with the post-termination obligations are considerable and continuing and thus not capable of ascertainment at this time.

42.     SKFI is entitled to preliminary and permanent injunctive relief enforcing all obligations of Section 16 of the Franchise Agreement.

## VII.  COUNT III - (BREACH OF FRANCHISE AGREEMENT – FAILURE TO COMPLY WITH POST-TERM COVENANT NOT TO COMPETE)

43.     SKFI hereby incorporates by reference paragraphs 1 through 33 herein.

44.     Under Section 17.3.2 of the Franchise Agreement, Defendants agreed that, for a period of two years after termination or expiration of that Franchise Agreement, they would not engage in a similar, competing business.

45.     By continuing to operate the 123 Store immediately after the termination of the Franchise Agreement, Defendants have failed to comply with the post-term covenant set forth in Section 17.3.2 of that Franchise Agreement.

46.     SKFI has no adequate remedy at law to protect its substantial business and property rights.  The damages from the Defendants' failure to comply with the post-termination obligations are considerable and continuing and thus not capable of ascertainment at this time.

47.    SKFI has been damaged and will continue to be damaged irreparably by the Defendants' breach of their post-term obligation under Section 17.3.2, entitling SKFI to injunctive relief to stop the violation, plus damages, costs, disbursements, interest, and attorneys' fees.

48.    The injunctive relief requested by SKFI is not intended to prevent the individual Defendants from operations in connection with Smoothie King Store No. 86, which is located at 890 South Mason, #D, Katy, Texas 77450.

## VIII.    COUNT IV - (BREACH OF FRANCHISE AGREEMENT – PAST FAILURE TO PAY)

49.    SKFI hereby incorporates by reference paragraphs 1 through 33 herein.

50.    The Defendants are in breach of the Franchise Agreement as a result of their failure to pay all past royalty fees, advertising contributions, and other charges due and owing under the Franchise Agreement through April 15, 2010, the date the termination of the Franchise Agreement became effective.

51.    The Defendants have also failed to comply with their agreement to pay royalty fees and advertising fees.   The Defendants presently owe $2,897.34 through April, 2010, in royalty and advertising fees plus payments for ongoing sales for the 123 Store.

52.    Further, Defendant UKE-MEX previously operated two additional Smoothie King stores, Nos. 175 and 382, respectively, both of which have closed. Defendant UKE-MEX owes SKFI $3,699.45 in unpaid royalties and advertising fees for

53.    Store No. 175 (closed in May 2009) and $7,344.94 in unpaid royalties and advertising fees for Store No. 382 (closed in January 2008).  These obligations were guaranteed by Defendants.As a result of the Defendants' breaches, SKFI has been damaged in an amount greater than $13,941.73, plus costs, disbursements, interest, and attorneys' fees.

## IX.  JURY DEMAND

54.    SKFI demands a trial by jury.

## X.  PRAYER FOR RELIEF

Plaintiff SKFI prays for judgment against Defendants as follows:

A.    For an order ratifying and enforcing the termination of the Franchise Agreement as of April 15, 2010;

B.    For a money judgment against the Defendants, jointly and severally, for damages caused by their trademark infringement, false designation, and dilution in violation of 15 U.S.C. § 1117, in an amount to be proved at trial, but in no event less than the amount of the Defendants' profits from their unlawful conduct, and treble damages;

C.    For an order for a preliminary and permanent injunction against the Defendants, and their agents, servants, and employees, and all others in active concert or participation with them, under section 43(c)(1) of the Lanham Act, directing the Defendants to stop all use of SKFI's name and trademarks in any manner;

D.    For an order for a preliminary and permanent injunction or order of specific performance against the Defendants, and their agents, servants, and employees, and all others in active concert or participation with them, enforcing all post-term obligations

contained in the Franchise Agreement, more specifically, directing the Defendants to cease operating the 123 Store and discontinue representing themselves as Smoothie King® franchisees with respect to the 123 Store; to cease using any confidential recipes, formulas, customer and supplier lists, product specification lists, methods, procedures, or techniques associated with the Smoothie King® system with respect to the 123 Store; to cease using the name and mark "SMOOTHIE KING" and all other related marks, names, slogans, and devices, including signs, advertising materials, and so forth with respect to the 123 Store; to sign the proper documents to turn over to SKFI the telephone numbers associated with the 123 Store; to return the confidential and proprietary Manuals and other materials relating to the operation of the 123 Store; to cancel any assumed name or equivalent registration that contains the name of "Smoothie King" or any of the other proprietary marks of SKFI with respect to the 123 Store; and to promptly pay all sums owning to SKFI and its affiliates; and to comply with their agreement not to compete, except for Store No. 86;

E.      For an order for a preliminary and permanent injunction against the Defendants, and their agents, servants, and employees, and all others in active concert or participation with them, enforcing the post-term obligation contained in the Franchise Agreement requiring the Defendants, except for Store No. 86, to stop operating their nutrition businesses offering nutritional drinks and general nutrition products, for two years;

F.    For a money judgment against the Defendants, jointly and severally, for actual damages arising from their breaches of contract, plus accrued interest, all in an amount to be proved at trial, but in no event less than $13,941.73;

G.    For SKFI's costs, disbursements, and attorneys' fees incurred in this action, as allowed by Section 25.4 of the Franchise Agreement and the Lanham Act; and

H.    For such other and further relief as the Court deems just and proper.

Dated:  April 21, 2010.

Respectfully submitted,

PHELPS DUNBAR LLP

BY:

David Lee Crawford
Texas Bar No. 05020100
Federal Bar No. 5835
700 Louisiana Street, Suite 2600
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
E-mail:  david.crawford@phelps.com

**ATTORNEYS FOR PLAINTIFF,
SMOOTHIE KING FRANCHISES, INC.**

OF COUNSEL:
**GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.**
Quentin R. Wittrock (#179061)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-3796
Telephone:  612/632-3000
Telecopier:  612/632-4444
E-mail:  quentin.wittrock@gmplaw.com

**Original Complaint**

**Page 16**

PD.3981272.1